IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
May 15, 2013 Session

## SHEILA DUNLAP v. LAUREL MANOR HEALTH CARE, INC.

**Appeal from the Circuit Court for Claiborne County**
**No. 12-CV-820     John D. McAfee, Judge**

**No. E2012-02432-COA-R3-CV - Filed August 29, 2013**

Sheila Dunlap ("plaintiff") brought this action alleging liability for the wrongful death of her daughter ("deceased") on the part of the nursing home operated by Laurel Manor Health Care, Inc. ("defendant") where deceased was living. Although the allegations of the complaint were couched in terms of ordinary negligence, the trial court determined that the cause of action was one for medical malpractice. The court dismissed the complaint for failure to comply with Tenn. Code Ann. § 29-26-122, which requires the filing a certificate of good faith with a medical malpractice complaint. We hold that the plaintiff's claims that the nursing home failed to properly administer medication and a medical device prescribed by a physician, and failed to monitor the medical condition of the deceased at all times prior to her death, sound in medical malpractice. Consequently, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court
Affirmed; Case Remanded**

CHARLES D. SUSANO, JR., P.J., delivered the opinion of the Court, in which D. MICHAEL SWINEY and JOHN W. MCCLARTY, JJ., joined.

Lyle H. Moe, Maryville, Tennessee, for the appellant, Sheila Dunlap, individually and as personal representative of the estate of Victoria Adkins.

Marc A. Sorin, Memphis, Tennessee, for the appellee, Laurel Manor Health Care, Inc.

**OPINION**

**I.**

We review the allegations of the complaint to determine whether they state a cause of action for ordinary negligence or medical malpractice.[1] This issue is dispositive because if the trial court correctly categorized the claims as sounding in medical malpractice, plaintiff's failure to file a certificate of good faith with the complaint is fatal. *See* Tenn. Code Ann. §§ 29-26-121 (2012); *Myers v. AMISUB (SFH), Inc.*, 382 S.W.3d 300, 311-12 (Tenn. 2012).

The complaint alleges as follows in pertinent part:

> While under the care and treatment of defendant nursing home, decedent suffered from Chronic Obstructive Pulmonary Disease ("COPD"), as well as fractured vertebra in her spine that rendered her bedridden and unable to care for herself without the assistance from a competent nursing staff.

> During her stay at defendant nursing home, decedent would periodically go to the University of Tennessee Medical Center in Knoxville, Tennessee (hereinafter "UTMC") for treatments.

> During one such visit to UTMC from around April 10th, 2010 to around April 16th, 2010 decedent complained of shortness of breath and a urinary trac[t] infection.

> As a result of the visit described above, decedent was prescribed a Continuous Positive Airway Pressure Machine ("CPAP") to increase the oxygen flow to her lungs along with numerous other medications, including Coumadin to prevent blood clots.

---

[1]As part of the Tennessee Civil Justice Act of 2011, the General Assembly amended the controlling statute, Tenn. Code Ann. § 29-26-101(a)(1), to define "[h]ealth care liability action" to mean "any civil action . . . alleging that a health care provider or providers have caused an injury related to the provision of, or failure to provide, health care services to a person, regardless of the theory of liability on which the action is based." The amendment applies to "all liability actions for injuries, deaths and losses covered by this act which accrue on or after" October 11, 2011. *See* Act of June 16, 2011, ch. 510, 2011 Tenn. Pub. Acts. Because the cause of action in this case accrued on May 4, 2010, before the amendment took effect, the Supreme Court's decision in *Estate of French v. Stratford House*, 333 S.W.3d 546 (Tenn. 2011), controls the outcome in this case, as discussed further below.

Decedent was released from UTMC on April 16, 2010 in good condition.

On or about April 30th, 2010 [decedent] returned to UTMC due to complications from a blood clot as well as chest pains. She was released from UTMC on or about May 3rd, 2010 in good condition.

On or about May 3, 2010, decedent was re-admitted to [defendant] Laurel Manor Nursing Home.

On or about May 4th, 2010, at approximately 2:00 a.m., Victoria Adkins [decedent] died while in the custody, care and control of the Defendant. Victoria Adkins was not discovered to be deceased until 5:00 a.m. on the morning of May 4th, 2010.

* * *

The Plaintiff . . . examined the overnight care chart of the deceased and learned there was no information whatsoever in her chart of any emergencies before her death. Additionally, the CPAP was on the floor in the box. When Plaintiff inquired whether that was on her person, the staff person indicated, "If she wanted the device on or needed it, she could have put it on herself or asked."

* * *

At the time of her death, the deceased was not wearing the prescribed CPAP breathing device, nor did she receive the proper dosage of Coumadin to prevent blood clots.

. . .[T]he decedent was bedridden at the time of her death, was immobile and was not able to retrieve the prescribed CPAP without assistance from Defendant's nursing home personnel, and relied completely on the care of Defendant's staff.

Upon information and belief, [decedent's] death resulted from Defendant's improper care of [decedent], in not properly administering the prescribed medications, not properly using the

-3-

required breathing device and not following proper and common patient care procedures required in the Defendant's facility.

(Numbering of paragraphs in original omitted.) The complaint alleged that defendant was negligent by (1) "not following established practice and procedures"; (2) "fail[ing] to provide decedent with the properly prescribed care, including failure to provide the prescribed medicine and failure to properly use[] the prescribed medical device"; and (3) failing "to devote the full time and attention to the proper and necessary care of [decedent] by Defendant's failure to monitor the condition of the patient at all times."

Defendant filed a motion to dismiss under Tenn. R. Civ. P. 12.02(6) for failure to state a claim upon which relief could be granted, alleging that all of plaintiff's claims sound in medical malpractice and therefore the failure to include a certificate of good faith mandates dismissal. The trial court agreed and dismissed the complaint. Plaintiff timely filed a notice of appeal.

II.

On appeal, we address the issue of whether the trial court correctly held that the acts and omissions alleged in the complaint bear a substantial relationship to the rendition of medical treatment by a medical professional, or concern medical art, science, training, or expertise, and consequently dismissed the action for failure to file a certificate of good faith.

III.

We evaluate the defendant's motion to dismiss under the following well-established and frequently-quoted principles:

> A defendant who files a motion to dismiss admits the truth of all of the relevant and material allegations contained in the complaint, but . . . asserts that the allegations fail to establish a cause of action.
>
> In considering a motion to dismiss, courts must construe the complaint liberally, presuming all factual allegations to be true and giving the plaintiff the benefit of all reasonable inferences. A trial court should grant a motion to dismiss only when it appears that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief. We review

-4-

the trial court's legal conclusions regarding the adequacy of the complaint de novo.

\* \* \*

. . . courts are not required to accept as true assertions that are merely legal arguments or "legal conclusions" couched as facts.

***Webb v. Nashville Area Habitat for Humanity, Inc.***, 346 S.W.3d 422, 426-27 (Tenn. 2011) (some quotation marks in original omitted; citations in original omitted).

IV.

In ***Estate of French***, 333 S.W.3d 546 (Tenn. 2011), the Supreme Court set forth the guiding principles for our review of the trial court's ruling that the complaint is one for medical malpractice, as opposed to ordinary negligence, stating as follows:

> [W]hen a claim alleges negligent conduct *which constitutes or bears a substantial relationship to the rendition of medical treatment by a medical professional*, the medical malpractice statute is applicable. Conversely, when the conduct alleged is not substantially related to the rendition of medical treatment by a medical professional, the medical malpractice statute does not apply.
>
> \* \* \*
>
> Medical malpractice cases typically involve a medical diagnosis, *treatment* or other scientific matters. The distinction between ordinary negligence and malpractice turns on whether the acts or omissions complained of involve a matter of medical science or art requiring specialized skills not ordinarily possessed by lay persons or whether the conduct complained of can instead be assessed on the basis of common everyday experience of the trier of fact.
>
> If the alleged breach of the duty of care set forth in the complaint is one that was based upon medical art or science, training, or expertise, then it is a claim for medical malpractice. If, however, the act or omission complained of is one that

requires no specialized skills, and could be assessed by the trier of fact based on ordinary everyday experiences, then the claim sounds in ordinary negligence.

\*      \*      \*

It is, of course, the responsibility of the courts to ascertain the nature and substance of a claim. The designation given those claims by either the plaintiff or the defendant is not determinative. For example, even though the Administratrix in this case made reference to neither the TMMA nor the term "medical malpractice" in the complaint, the requirements of the TMMA apply if, in fact, the factual basis for the claim sounds in medical malpractice. Nevertheless, a single complaint may be founded upon both ordinary negligence principles and the medical malpractice statute. The TMMA applies only to those alleged acts *that bear a substantial relationship to the rendition of medical treatment* by a medical professional, or concern medical art or science, training, or expertise. If there are additional acts or omissions alleged that do not bear a substantial relationship to medical treatment, require no specialized skills, or could be assessed by the trier of fact based upon ordinary everyday experiences, then the claims may be made under an ordinary negligence theory.

*Id.* at 555-57 (emphasis added) (quoting ***Gunter v. Lab Corp. of Am.***, 121 S.W.3d 636, 641 (Tenn. 2003); ***Peete v. Shelby Cnty. Health Care Corp.***, 938 S.W.2d 693, 696 (Tenn. Ct. App. 1996)).

Our examination of the gravamen of the complaint leads us to the inescapable conclusion that the allegations of negligence bear a substantial relationship to the rendition of medical treatment. The claim that the defendant negligently administered, or failed to administer, medicine that was prescribed by a physician directly pertains to medical treatment. The proper administration of prescribed medicine *is*, in fact, medical treatment. Similarly, the proper administration of a prescribed medical device such as a CPAP machine also "bears a substantial relationship to the rendition of medical treatment." *Id.* at 557. Finally, the plaintiff's allegation that the defendant failed "to monitor the condition of the patient at all times" is, like the other two allegations of negligence, a matter that "concern[s] medical art or science, training, or expertise" and could not "be assessed by the trier of fact based upon ordinary everyday experiences." *Id.* Therefore, under the controlling principles

espoused by the High Court in *Estate of French*, we must affirm the judgment of the trial court dismissing the complaint.

V.

The judgment of the trial court is affirmed. Costs on appeal are assessed to the appellant, Sheila Dunlap, individually and as personal representative of the estate of Victoria Adkins. The case is remanded, pursuant to applicable law, for collection of costs assessed below.

_____
CHARLES D. SUSANO, JR., PRESIDING JUDGE