IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
January 14, 2015 Session

## CARRIE COGGINS ET AL. v. HOLSTON VALLEY MEDICAL CENTER

**Appeal from the Law Court for Sullivan County**
**No. C39965(M)     John S. McLellan, III, Judge**

---

**No. E2014-00594-COA-R3-CV-FILED-JUNE 15, 2015**

---

On August 6, 2011, Carrie Coggins and her husband Joel R. Coggins (Plaintiffs) visited a patient at Wellmont Holston Valley Medical Center (Hospital).  While there, Mrs. Coggins tripped and fell, sustaining serious injuries.  Plaintiffs[1] filed suit and alleged that Mrs. Coggins tripped over a feeding tube that, according to Plaintiffs, had been negligently left near her friend's bed in such a way as to create a dangerous condition.  Before they filed suit, Plaintiffs served Hospital with pre-suit notice of their intent to file.  *See* Tenn. Code Ann. § 29-26-121 (2012).  Hospital filed a motion to dismiss or, in the alternative, for summary judgment.  The trial court granted Hospital summary judgment.  The court held that (1) Plaintiffs' action was an ordinary negligence action based on premises liability, not a health care liability action; and (2) Plaintiffs could not rely upon (a) Tenn. Code Ann. § 29-26-121(c), which extends the applicable statutes of limitations and repose for 120 days when pre-suit notice is properly given, or (b) Tenn. Code Ann. § 29-26-121(e), which provides that "[i]n the event that a complaint is filed in good faith reliance on the extension of the statute of limitations or repose granted by this section and it is later determined that the claim is not a health care liability claim, the extension of the statute of limitations and repose granted by this section is still available to the plaintiff."  We agree with the trial court's holding that Plaintiffs' claim sounds in ordinary negligence under a premises liability theory.  However, because amendments to the malpractice statute made the application of the "ordinary negligence/medical malpractice" dichotomy potentially confusing and unclear at the time, and because both sides of this litigation tried this case on the mistaken, albeit understandable, belief that the definition of a "health care liability action" found in the Tennessee Civil Justice Act of 2011 applies to this case, a position that the trial court picked up on and followed, we hold that Plaintiffs filed their complaint in good faith reliance on the extension of the applicable statute of limitations and are therefore entitled to 121(c)'s 120-day extension.

---

[1] Mr. Coggins' suit is a derivative action.

Therefore, Plaintiffs' complaint was timely filed. Accordingly, we vacate the judgment of the trial court and remand for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Law Court Vacated; Case Remanded**

CHARLES D. SUSANO, JR., C.J., delivered the opinion of the court, in which D. MICHAEL SWINEY and JOHN W. MCCLARTY, JJ., joined.

T. Martin Browder, Jr. and R. Wayne Culbertson, Kingsport, Tennessee, for the appellants, Carrie Coggins and Joel R. Coggins.

Andrew T. Wampler and Russell W. Adkins, Kingsport, Tennessee, for the appellee, Wellmont Health System dba Wellmont Holston Valley Medical Center.

**OPINION**

I.

Plaintiffs filed their complaint on December 3, 2012, alleging in pertinent part as follows:

> Carrie Coggins, and her husband[,] Joel, were visiting a patient, Berdett Arrowood, on the fifth floor of Holston Valley Medical Center on or about August 6th, 2011, and upon entering the room, Berdett Arrowood motioned to Carrie Coggins indicating that he would like for her to come to the left side of his bed. Carrie Coggins walked around the end of the bed until she reached a location near the head of the bed, and the patient then indicated that he would actually be more comfortable talking with Carrie and her husband if Carrie would go back to the other side of the bed where he could actually look at both as he was talking to them. As she turned to walk back toward the opposite side of the bed, her foot became entangled in a feeding tube which had carelessly and negligently been permitted to drape down upon the floor, causing her to lose her balance. She fell hard onto the concrete floor, shattering and breaking her hip. Carrie's fall was the direct and proximate result of the nursing and maintenance personnel placing the tubing in a manner that

2

caused it to drape onto the floor, creating a hazard and an impediment for anyone walking near the patient[']s bed.

\* \* \*

Carrie Coggins avers that the nursing personnel, administrative officers and maintenance and nursing personnel employed by the hospital, and acting as agents and servants of the said hospital departed from an acceptable standard of care in the community or in the similar communities in permitting a hazard to remain in place, that is to say medical tubing draped upon the floor in or around a patient's bed, which they in the exercise of due care would have known presented a hazard of falling to visitors of the patient. She further avers that the carelessness and negligence of the agents and servants of Holston Valley Medical Center in departing from an acceptable standard of care for Kingsport, Tennessee or in the same or similar communities was the direct and proximate cause of her fall and her injuries, and that she would not have suffered the injuries, residual pain, impairment and damages that she has but for the said actions and inactions of the defendant described above.

Plaintiffs aver that the defendants departed from a recognized standard of acceptable professional practice in regard to the maintenance[,] use, and configuration of medical equipment in and around the facility, and that they acted with less than or failed to act with ordinary or reasonable care in accordance with an acceptable standard of care, and that as a proximate result of their negligent acts or omissions Carrie Coggins suffered injuries which she would not otherwise have had.

(Paragraph numbering in original omitted.) Plaintiffs state in their complaint that they have complied with the pre-suit notice requirements of Tenn. Code Ann. § 29-26-121 by delivering the required notice to Hospital on August 6, 2012, more than 60 days before filing suit.[2]

---

[2] Plaintiffs also filed a certificate of good faith with their complaint in accordance with the requirements of Tenn. Code Ann. § 29-26-122.

3

On August 12, 2013, Hospital filed a motion to dismiss or, in the alternative, for summary judgment, alleging that Plaintiffs' action was not timely filed within the applicable one-year statute of limitations. Hospital argues that "[p]laintiff alleges personal injury occurring August 6, 2011 under a premises liability theory but failed to file suit until December 3, 2012."[3] Plaintiffs responded that their claim was brought under the Tennessee Health Care Liability Act (THCLA), which provides, at Tenn. Code Ann. § 29-26-121(c), that

> When notice is given to a provider as provided in this section, the applicable statutes of limitations and repose shall be extended for a period of one hundred twenty (120) days from the date of expiration of the statute of limitations and statute of repose applicable to that provider.

Additionally, Plaintiffs argued that if the trial court disagreed that their claim was governed by the THCLA, they were still entitled to the 120-day extension under Tenn. Code Ann. § 29-26-121(e), which provides, as previously noted, as follows:

> In the event that a complaint is filed in good faith reliance on the extension of the statute of limitations or repose granted by this section and it is later determined that the claim is not a health care liability claim, the extension of the statute of limitations and repose granted by this section is still available to the plaintiff.

The trial court granted Hospital summary judgment, finding and holding in pertinent part as follows:

> 1. The Complaint asserts a claim for premises liability arising from Plaintiff Carrie Coggins' visit to a patient at [Hospital] on August 6, 2011.
>
> 2. Based on the allegations of Plaintiffs in the Complaint, Plaintiff Carrie Coggins was not a patient of [Hospital] at the time of the alleged injury.
>
> 3. Plaintiffs sent a notice of intent to sue letter under the Health Care Liability Act to [Hospital] on August 6, 2012,

---

[3] Hospital also argued that the action should be dismissed for insufficiency of process and insufficiency of service of process. We will discuss these matters later in this opinion.

4

asserting a health care liability claim. Plaintiffs did not file a Complaint at that time.

4. Plaintiffs filed a Complaint on December 3, 2012, alleging fault against the Defendant related to a fall sustained by Plaintiff Carrie Coggins.

5. The statute of limitations for personal injury related to a premises liability claim arising from a fall is one year pursuant to Tenn. Code Ann. § 28-3-104.

6. The Tennessee Health Care Liability Act applies to health care services provided to a person, and therefore applies only to patients. Because Plaintiff Carrie Coggins was not a patient, the Health Care Liability Act does not apply in this case. Plaintiffs cannot rely on Tenn. Code Ann. § 29-26-121(e) to extend the statute of limitations to allow time for her to file a premises liability claim.

7. Because Plaintiffs did not file a Complaint within one year from the date of the alleged injury in August 2011, the Court finds that this action is barred by the one year statute of limitations, Tenn. Code Ann. § 28-3-104.

Plaintiffs timely filed a notice of appeal.

## II.

Plaintiffs raise the following issues:

1. Whether the trial court correctly granted summary judgment based on its ruling that Plaintiffs' action is one for ordinary negligence, not governed by the THCLA, and not filed within the one-year statute of limitations.

2. If the action is properly classified as not stating a health care liability claim, whether Plaintiffs may still rely on Tenn. Code Ann. § 29-26-121(e) because they filed in good faith reliance on the extension of the statute of limitations or repose granted by the THCLA.

Hospital raises the additional issue of whether the trial court should have dismissed Plaintiffs' action on Hospital's asserted grounds of insufficiency of process and insufficiency of service of process.

## III.

In the present posture of this case, there is no genuine issue of material fact. The issues presented are all questions of law. "We review a trial court's decision on a motion for summary judgment de novo with no presumption of correctness. Issues of statutory construction are also reviewed de novo." *Harris v. Haynes*, 445 S.W.3d 143, 146 (Tenn. 2014) (internal citation omitted).

## IV.

## A.

As will be clearly demonstrated later in this opinion, a brief review of the recent history of the General Assembly's amendments to the statute formerly called the Medical Malpractice Act, and now known as the Tennessee Health Care Liability Act, will be helpful. Prior to 2011, the then-existing statutory scheme referred to "a malpractice action" in several places. It provided that a claimant had to satisfy certain requirements in order to successfully pursue such an action. For example, Tenn. Code Ann. 29-26-115 (Supp. 2011) stated that:

> (a) In a malpractice action, the claimant shall have the burden of proving by evidence as provided by subsection (b):
>
> (1) The recognized standard of acceptable professional practice in the profession and the specialty thereof, if any, that the defendant practices in the community in which the defendant practices or in a similar community at the time the alleged injury or wrongful action occurred;
>
> (2) That the defendant acted with less than or failed to act with ordinary and reasonable care in accordance with such standard; and
>
> (3) As a proximate result of the defendant's negligent act or omission, the plaintiff suffered injuries which would not otherwise have occurred.

6

In 2011, another section, Tenn. Code Ann. § 29-26-121 (Supp. 2011), originally enacted in 2008, *see* 2008 Pub. Acts Ch. 919, § 1, and amended a year later in 2009 Pub. Acts Ch. 425, § 1, provided, in part, as follows:

> (a)(1) Any person . . . asserting a potential claim for medical malpractice shall give written notice of the potential claim to each health care provider that will be a named defendant at least sixty (60) days before the filing of a complaint based upon medical malpractice in any court of this state.
>
> \*          \*          \*
>
> (b) If a complaint is filed in any court alleging a claim for medical malpractice, the pleadings shall state whether each party has complied with subsection (a) and shall provide the documentation specified in subdivision (a)(2). The court may require additional evidence of compliance to determine if the provisions of this section have been met. The court has discretion to excuse compliance with this section only for extraordinary cause shown.
>
> (c) When notice is given to a provider as provided in this section, the applicable statutes of limitations and repose shall be extended for a period of one hundred twenty (120) days from the date of expiration of the statute of limitations and statute of repose applicable to that provider. . . .
>
> \*          \*          \*
>
> (e) In the event that a complaint is filed in good faith reliance on the extension of the statute of limitations or repose granted by this section and it is later determined that the claim is not a medical malpractice claim, the extension of the statute of limitations and repose granted by this section is still available to the plaintiff.

From 1985 until 2011, the statutory scheme alluded to actions for "malpractice" and "medical malpractice," but did not statutorily define those terms.[4] Tennessee courts

---

[4] The General Assembly enacted the Medical Malpractice Review Board and Claims Act in 1975, *see* 1975 Pub. Acts Ch. 299, and amended it by 1976 Pub. Acts Ch. 759, § 1, so that from 1976 until 1985, the statute provided the following definition:

frequently were tasked with deciding whether a cause of action was properly classified as an "ordinary negligence" case or a "medical malpractice" case. Consequently, a substantial body of common law was developed providing guiding principles for deciding this issue. That body of law culminated in the decision of the Supreme Court in the case of *Estate of French v. Stratford House*, 333 S.W.3d 546 (Tenn. 2011). In that opinion, the High Court reviewed the caselaw pertaining to its determination of "whether the . . . claims are based upon ordinary negligence, medical malpractice, or both." *Id.* at 554.

In 2011, the General Assembly enacted the "Tennessee Civil Justice Act," part of which provided for a new section, Tenn. Code Ann. § 29-26-101, which created a new cause of action entitled "health care liability" as follows:

> (1) "Health care liability action" means any civil action, including claims against the state or a political subdivision thereof, alleging that a health care provider or providers have caused an injury related to the provision of, or failure to provide, health care services to a person, regardless of the theory of liability on which the action is based;
>
> \* \* \*
>
> (b) Health care services to persons includes care by health care providers, which includes care by physicians, nurses, licensed practical nurses, pharmacists, pharmacy interns or pharmacy technicians under the supervision of a pharmacist, orderlies, certified nursing assistants, advance practice nurses, physician assistants, nursing technicians and other agents, employees and representatives of the provider, and also includes staffing, custodial or basic care, positioning, hydration and similar patient services.

---

"Medical malpractice action" means an action for damages for personal injury or death as a result of any medical malpractice by a health care provider, whether based on tort or contract law. The term shall not include any action for damages as a result of negligence of a health care provider when medical care by such provider is not involved in such action.

Tenn. Code Ann. 29-26-102(6) (1980). In 1985, the legislature repealed Tenn. Code Ann. § 29-26-101 through § 29-26-114, including the definitions contained in section 102. *See* 1985 Pub. Acts Ch.184, § 4(c).

8

*See* 2011 Pub. Acts Ch. 510, § 8.  As particularly significant to the case at bar, section 24 of the Civil Justice Act of 2011 provides that "[t]his act shall take effect October 1, 2011, . . . and shall apply to all liability actions for injuries, deaths and losses covered by this act *which accrue on or after such date*."

In 2012, the General Assembly amended the Tennessee Code Annotated in 58 places, deleting the terms "malpractice" and "medical malpractice" nearly everywhere those words appeared in the Code, and replacing those terms with "health care liability." 2012 Pub. Acts Ch. 798.  This act amended the statute then known as the Tennessee Medical Malpractice Act (TMMA) to replace "medical malpractice" with "health care liability" in every section.  *See id.*, Ch. 798, §§ 7-15.  The act took effect on April 23, 2012, the date Governor Bill Haslam signed it into law.  *Id.* § 59.  At that point, the TMMA became known as the Tennessee Health Care Liability Act, or THCLA.

Mrs. Coggins' fall and injury occurred, and her cause of action accrued, on August 6, 2011.  She provided Hospital with pre-suit notice of her potential health care liability claim on August 6, 2012.  On that date, the statutory scheme had been effectively amended to refer to "health care liability" instead of "malpractice"; and Tenn. Code Ann. § 29-26-115 and -121 (the pre-suit notice requirement) were written exactly as quoted earlier except for the replacement of the "malpractice" terms.  The Civil Justice Act of 2011 created and defined "health care liability action," *but by the Act's express terms, it did not apply to Plaintiffs' action because that action accrued before the effective date of October 1, 2011.*

B.

Against this historical background, this case took an incorrect and unfortunate turn.  The parties all failed to comprehend that the definition of "health care liability action" in the THCLA simply does not apply to Plaintiff's claim.  They compounded this error by leading the trial court into the same error.

Plaintiffs argued to the trial court, and argue on appeal, that their claim falls under the definition of a "health care liability action" as set forth in the Civil Justice Act of 2011.  In their brief, Plaintiffs, after quoting Tenn. Code Ann. § 29-26-101, argue that:

> The Healthcare Liability Act [*sic*: Civil Justice Act] passed in 2011 codified and expanded what [were] previously malpractice actions to include services[,] for example[,] performed by orderlies and services that include even custodial or basic care or similar services, but did not specifically limit causes of action to only patients, but to any

civil action arising out of services provided to persons. See definitions of Health care services above. By broadening what may have previously been claims sounding in ordinary negligence, the act encouraged suits to be filed pursuant to the act.

Hospital unwittingly "bought into" this erroneous predicate. It argues on appeal that Plaintiffs' claim does not fall under the definition of a "health care liability action," stating in its brief,

> A health care liability action is "any civil action" . . . "alleging that a health care provider or providers have caused and injury related to the provision of, or failure to provide, health care services to a person, regardless of the theory of liability on which the action is based." Tenn. Code Ann. § 29-26-101(a)(1).
>
> \*　　\*　　\*
>
> [Plaintiffs'] claim is not a healthcare liability claim under the Act. The Act applies to "an injury related *to the provision of, or failure to provide*, health care services to a person, regardless of the theory of liability on which the action is based." Tenn Code Ann. § 29-26-101(a)(1) (emphasis added).

Furthermore, the trial court, in its order of dismissal, observed that the THCLA "applies to health care services provided to a person," which is a quote from Tenn. Code Ann. § 29-26-101(a)(1), the statutory definition expressly not applicable to this action. As we have stated, the Civil Justice Act of 2011 does not apply to this action.[5] Accordingly, the Supreme Court's analysis in **Estate of French** governs the question of whether Plaintiffs' claim is for ordinary negligence or medical negligence, whether expressed in terms of "malpractice" or "health care liability." *See **Dunlap v. Laurel Manor Health Care, Inc.**, 422 S.W.3d 577, 578 n.1 (Tenn. Ct. App. 2013)* ("Because the cause of action in this case

---

[5] The somewhat understandable confusion and misapprehension of all parties involved is perhaps explained in part by the fact that anyone researching section 29-26-101 in the Tennessee Code Annotated book, or online, will see only that the "effective date" of the legislation is October 1, 2011. Only by referring to the language of the Public Act itself, 2011 Pub Acts. Ch. 510, § 24, will a researcher learn that "[t]his act shall take effect October 1, 2011, . . . and shall apply to all liability actions for injuries, deaths and losses covered by this act *which accrue on or after such date*." (Emphasis added.)

accrued on May 4, 2010, before the [Civil Justice Act] amendment took effect, the Supreme Court's decision in *Estate of French* . . . controls").

In *Estate of French*, the Supreme Court reiterated the following guiding principles:

> [W]hen a claim alleges negligent conduct which constitutes or bears a substantial relationship to the rendition of medical treatment by a medical professional, the medical malpractice statute is applicable. Conversely, when the conduct alleged is not substantially related to the rendition of medical treatment by a medical professional, the medical malpractice statute does not apply.
>
> "The physician-patient relationship is an essential element of a cause of action for medical malpractice, but not for common law negligence." *Pittman v. Upjohn Co*., 890 S.W.2d 425, 431 (Tenn. 1994); *see also Bradshaw v. Daniel*, 854 S.W.2d 865, 870 (Tenn. 1993). Not all cases involving health or medical care automatically qualify as medical malpractice claims, *see Pullins v. Fentress Cnty. Gen. Hosp*., 594 S.W.2d 663, 669 (Tenn. 1979), and physicians may be exposed to liability to non-patients under ordinary negligence principles. *Bradshaw*, 854 S.W.2d at 870; *Wharton Transp. Corp. v. Bridges*, 606 S.W.2d 521, 526 (Tenn. 1980). Moreover, the medical malpractice statute may apply to non-physicians if they are involved in the medical treatment of patients. *Gunter*, 121 S.W.3d at 640.
>
> Our Court of Appeals has further defined the standard that we set forth in *Gunter* and reaffirmed in *Draper*:
>
>> Medical malpractice cases typically involve a medical diagnosis, treatment or other scientific matters. The distinction between ordinary negligence and malpractice turns on whether the acts or omissions complained of involve a matter of medical science or art requiring specialized skills not ordinarily possessed by lay persons or whether the conduct complained of can instead be assessed on the basis of

11

common everyday experience of the trier of fact.

> *Peete v. Shelby Cnty. Health Care Corp*., 938 S.W.2d 693, 696 (Tenn. Ct. App. 1996) (*quoting* **Graniger v. Methodist Hosp. Healthcare Sys.**, No. 02A01–9309–CV–00201, 1994 WL 496781, at *3 (Tenn. Ct. App. Sept. 9, 1994)).  If the alleged breach of the duty of care set forth in the complaint is one that was based upon medical art or science, training, or expertise, then it is a claim for medical malpractice.  If, however, the act or omission complained of is one that requires no specialized skills, and could be assessed by the trier of fact based on ordinary everyday experiences, then the claim sounds in ordinary negligence.

> *        *        *

> It is, of course, the responsibility of the courts to ascertain the nature and substance of a claim.  The designation given those claims by either the plaintiff or the defendant is not determinative.  For example, even though the Administratrix in this case made reference to neither the TMMA nor the term "medical malpractice" in the complaint, the requirements of the TMMA apply if, in fact, the factual basis for the claim sounds in medical malpractice.  Nevertheless, a single complaint may be founded upon both ordinary negligence principles and the medical malpractice statute.  The TMMA applies only to those alleged acts that bear a substantial relationship to the rendition of medical treatment by a medical professional, or concern medical art or science, training, or expertise.  If there are additional acts or omissions alleged that do not bear a substantial relationship to medical treatment, require no specialized skills, or could be assessed by the trier of fact based upon ordinary everyday experiences, then the claims may be made under an ordinary negligence theory.

333 S.W.3d at 555-57 (internal citation omitted).

Applying these principles to the facts of the present case, we agree with the trial court and hold that Plaintiffs' allegations sound in ordinary negligence under a premises

liability theory.[6]   Plaintiffs alleged that Mrs. Coggins' "foot became entangled in a feeding tube which had carelessly and negligently been permitted to drape down upon the floor" and that her fall "was the direct and proximate result of the nursing and maintenance personnel placing the tubing in a manner that caused it to drape onto the floor, creating a hazard and an impediment for anyone walking near the patient[']s bed." First, this is an allegation of negligence that "could be assessed by the trier of fact based upon ordinary everyday experiences." *Id.* at 557.   Second, it requires no specialized skills to realize that it is potentially dangerous to leave a ropelike object in place where it is likely to cause someone to trip; nor does it require such specialized knowledge to know that the reasonable thing to do is to move it to a secure and safe place.   Third, the act of leaving the tube in a dangerous place, causing a tripping hazard, does not bear a *substantial* relationship to the rendition of medical treatment, nor does it "concern medical art or science, training, or expertise." *Id.*   Fourth, Mrs. Coggins was not a patient, but a visitor, and *Estate of French* recognizes that a "physician-patient relationship is an essential element of a cause of action for medical malpractice, but not for common law negligence." *Id.* at 555.

C.

Because Plaintiffs' claim is properly classified as one for ordinary negligence, their complaint was not timely filed and must be dismissed unless Plaintiffs are correct in asserting that the trial court should have applied Tenn. Code Ann. § 29-26-121(e) to grant them a 120-day extension.   Again, this statute provides:

> In the event that a complaint is filed in good faith reliance on the extension of the statute of limitations or repose granted by this section and it is later determined that the claim is not a health care liability claim, the extension of the statute of limitations and repose granted by this section is still available to the plaintiff.

Plaintiffs obviously relied on the extension granted by Tenn. Code Ann. § 29-26-121(c) in providing pre-suit notice to Hospital on August 6, 2012.   Furthermore, we have "later determined that the claim is not a health care liability claim."   The question remaining is whether Plaintiffs' reliance on the extension of the statute of limitations was "in good faith."   Neither party has cited a Tennessee appellate court decision construing Tenn. Code Ann. § 29-26-121(e), nor have we found any such decision.

---

[6] Since Plaintiffs' claim is not controlled by the THCLA, we express no opinion as to whether this claim falls within the presently-existing provisions of Tenn. Code Ann. § 29-26-101(a)(1).

We are of the opinion that subsection 121(e) was enacted with the recognition that there is, and always has been, a "gray area" between claims for ordinary and medical negligence, and it has not always been easy to predict how a court will construe a claim. *See Estate of French*, 333 S.W.3d at 555 ("Because medical malpractice is a category of negligence, the distinction between medical malpractice and negligence claims is subtle; there is no rigid analytical line separating the two causes of action."). Before the TMMA was amended beginning in 2008, the consequences of "guessing wrong" as to this issue were not severe; the classification of a claim generally only had a bearing on the type and standard of proof required to establish it. With the advent of the 2008 pre-suit notice and certificate of good faith requirements and later opinions construing them, the consequence of mislabeling a claim became potentially fatal. *See Myers v. AMISUB (SFH), Inc.*, 382 S.W.3d 300, 312 (Tenn. 2012) (failure to comply with certificate of good faith requirement of Tenn. Code Ann. § 29-26-122 requires dismissal with prejudice); *Foster v. Chiles*, 2015 WL 343872 at *4 (Tenn., filed Jan. 27, 2015) (failure to comply with pre-suit notice requirement of Tenn. Code Ann. § 29-26-121 requires dismissal without prejudice). The "good faith reliance" provision provides the 120-day extension of the statutes of limitations and repose for those who file an action under the wrongly-held but reasonably justifiable belief that their claim sounds in health care liability.

We believe the Plaintiffs here acted in good faith. They fully and timely complied with the requirements of both subsections 121 and 122. We have already discussed the understandable confusion generated by the amendments to the TMMA, and the misunderstanding in this case under which all the parties and the trial court labored. As we have noted, Plaintiffs were faced with a statutory scheme that had relabeled any "medical malpractice" claim as a "health care liability" claim, but this was of no help to Plaintiffs because the public act that created and defined a "health care liability action" expressly does not apply to their claim. Plaintiffs had a reasonable argument that they thought their claim would be considered a health care liability claim, or at least that if they guessed wrong, they would be protected by section 121(e). That they were mistaken about the classification of their claim is of little consequence to the analysis, because the statute specifically anticipates and addresses the situation where a plaintiff thinks he or she is presenting a health care liability claim and "it is later determined that the claim is not a health care liability claim." Tenn. Code Ann. § 29-26-121(e). It appears that Plaintiffs made the decision not to file this action as an ordinary negligence claim, even though they apparently had time to do so under the one-year statute of limitations. There is no indication that they made this election for any improper purpose or motive, or to gain unfair advantage. For all of these reasons, we vacate the trial court's judgment that Plaintiffs are not entitled to the 120-day extension provided by Tenn. Code Ann. § 29-26-121(e), and remand for an opportunity for Plaintiffs' claim to be heard on its merits.

D.

Hospital argues that the trial court should have dismissed Plaintiffs' action for insufficiency of process and insufficiency of service of process. Hospital asserts that Plaintiffs "did not attempt service until seven months after filing, and did so by leaving the unissued Summons with persons who were not employees of [Hospital] nor authorized to receive service." It is undisputed[7] that a summons was reissued and served upon Hospital on November 27, 2013. At the motion hearing, the trial court stated that it would decline to make a ruling on this issue, saying:

> THE COURT: If I'm wrong [on the THCLA ruling], . . . then that brings it all back anyway, so I'm going to decline making any further ruling. . . . I'm either right or wrong there and if I'm wrong then you're [Plaintiffs] probably okay, if I'm right here we are where we are right now.

Tenn. R. Civ. P. 3 provides as follows:

> All civil actions are commenced by filing a complaint with the clerk of the court. An action is commenced within the meaning of any statute of limitations upon such filing of a complaint, whether process be issued or not issued and whether process be returned served or unserved. If process remains unissued for 90 days or is not served within 90 days from issuance, regardless of the reason, the plaintiff cannot rely upon the original commencement to toll the running of a statute of limitations unless the plaintiff continues the action by obtaining issuance of new process within one year from issuance of the previous process or, if no process is issued, within one year of the filing of the complaint.

In construing Rule 3, this Court has stated:

> [T]he failure to immediately issue process is not fatal to a plaintiff's reliance on the filing of the complaint to toll the running of the statute of limitations. If, when the complaint is

---

[7] Hospital admitted that a summons was served on November 27, 2013. Hospital argues, however, that deficiencies in the issuance of an earlier summons had the effect of invalidating the service of November 27, 2013. No authority is cited for this argument. Furthermore, we see no adverse effect on the later service by virtue of a problem with the original service.

15

filed, no process is issued for 30 days,[8] a litigant still has a year from the filing of the complaint to secure the issuance of process and thereby "save" the date of filing of the complaint as an act tolling the period of limitations.

*Slone v. Mitchell*, 205 S.W.3d 469, 473 (Tenn. Ct. App. 2005) (footnote added); *see also Stempa v. Walgreen Co.*, 70 S.W.3d 39, 43 (Tenn. Ct. App. 2001)("Applying the plain and unambiguous language of Rule 3, we conclude that because Plaintiffs had process issued within one year of the filing of the Complaint, they are entitled to rely on the original filing date to toll the running of the statute of limitations. Accordingly, their lawsuit was not subject to dismissal on that basis."). In the present case, because Plaintiffs had process issued within one year of the filing date of December 3, 2012, Tenn. R. Civ. P. 3 allows their action to proceed.

V.

The judgment of the trial court is vacated and the case remanded for further proceedings consistent with this opinion. Costs on appeal are assessed to the Appellee, Wellmont Health System dba Wellmont Holston Valley Medical Center.

_____
CHARLES D. SUSANO, JR., CHIEF JUDGE

---

[8] At the time of our decision in *Slone v. Mitchell*, Rule 3 provided for "30 days" instead of the current "90 days" but was otherwise identically worded.